UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **OLIVIA VEGA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1931** |
| **MARLIN GUSMAN, ET AL.** | **SECTION D (2)** |

### ORDER AND REASONS

Before the Court is the Motion to Dismiss filed by Defendants Sheriff Marlin Gusman, Deputy Michelle Johnson, Deputy Floyd Stevenson, and Deputy Alvis Favorite (collectively, the "OPSO Defendants").[1] Plaintiff has filed an Opposition,[2] and the OPSO Defendants have filed a Reply.[3] Before the Court is also Defendant Jason Williams's Motion to Dismiss.[4] The Motion is opposed,[5] and Williams has filed a Reply.[6] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court grants OPSO Defendants' Motion in part, grants Williams's Motion, and grants Plaintiff leave to amend her Complaint.

### I.   FACTUAL BACKGROUND

This case arises from an altercation and subsequent arrest at Harrah's Casino. On July 8, 2019, Plaintiff Olivia Vega was attending an event sponsored by Larry

---

[1] R. Doc. 11.
[2] R. Doc. 14.
[3] R. Doc. 22.
[4] R. Doc. 36.
[5] R. Doc. 37.
[6] R. Doc. 40.

Morrow Events at the Masquerade night club in Harrah's Casino.[7] At one point, deputies approached Vega and requested her identification card.[8] Plaintiff alleges that when Vega followed the deputies to gain information regarding their request and entered the lobby of Harrah's Casino, she was forcefully knocked to the ground by three to four deputies, including Deputy Michelle Johnson and Deputy Floyd Stevenson.[9] She claims that she was then handcuffed and wrongfully detained in a holding room in the casino.[10]

Vega was arrested on three charges: Battery of a Police Officer, Resisting by Force, and Disturbing the Peace.[11] She was then transported to the Orleans Parish Justice Complex.[12] Vega alleges that at the jail, staff took various items from her which were never returned, that she was forced to strip and wear a jumpsuit and underwear so tight that they bruised her, and that she was injected with an unknown substance that caused her to lose consciousness.[13]

Vega was released during the afternoon on July 8 after posting bail.[14] She then attended a court appearance.[15] She alleges that the Orleans Parish District Attorney's Office ("OPDA") pursued charges against her based on false reports

---

[7] R. Doc. 1 at 4 ¶ 12.
[8] *Id.* at 5 ¶ 19.
[9] *Id.* at 5 ¶ 19.
[10] *Id.* at 5-6 ¶¶ 19-20.
[11] R. Doc. 1 at 6 ¶ 23.
[12] *Id.* at 6 ¶ 24.
[13] *Id.* at 6-7 ¶¶ 25-28.
[14] R. Doc. 1 at 7 ¶ 29.
[15] *Id.* at 7 ¶ 30.

written by Deputy Floyd Stevenson, without properly screening the case.[16] The case was ultimately dismissed on March 3, 2020.[17]

Plaintiff then filed suit against Defendant Marlin Gusman as Sheriff of Orleans Parish in his official capacity, Defendant Leon Cannizzaro as District Attorney for Orleans Parish in his official capacity,[18] Deputies Michelle Johnson, Floyd Stevenson, and Alvis Favorite in their official and individual capacities, various John and Jane Doe Deputies, Harrah's Casino, and Larry Morrow Events, LLC.[19] Plaintiff alleges a Section 1983 claim against Defendants Gusman, Stevenson, Johnson, Favorite, and Does arising out of her arrest and detention at Orleans Jail Center, as well as against Defendant Cannizzaro for her prosecution.[20] Vega also brings a claim for negligent supervision against Defendants Harrah's Casino and Larry Morrow Events,[21] and a claim for negligence under Louisiana Civil Code article 2315 against Defendants Johnson, Stevenson, Favorite and Does.[22]

Defendants Gusman, Johnson, Stevenson, and Favorite move to dismiss Plaintiff's claims.[23] Defendants argue that Gusman is not liable in his official capacity because he was not the "final policymaker" on the date of the incident as an Independent Jail Compliance Director had been appointed. Defendants further argue

---

[16] *Id.* at 7 ¶¶ 31, 39.
[17] *Id.* at 7 ¶ 32.
[18] The Court notes that Jason Williams has been sworn in to succeed Mr. Cannizzaro as Orleans Parish District Attorney and therefore Mr. Williams, in his official capacity, is the proper party. The parties recognize as much. *See* R. Docs. 36 and 37.
[19] *See generally* R. Doc. 1.
[20] R. Doc. 1 at 10-11 ¶¶ 48-55.
[21] *Id.* at 11-12 ¶¶ 56-61.
[22] *Id.* at 12 ¶¶ 62-65.
[23] R. Doc. 11.

that even if Gusman were liable, Plaintiff has failed to state facts that support an official capacity claim against Gusman (or Johnson, Stevenson, or Favorite). Defendants also contend that Plaintiff cannot maintain a Section 1983 claim against Stevenson for drafting a false report, and that Plaintiff does not allege sufficient factual detail to maintain a claim against Favorite. Finally, Defendants argue that Johnson, Stevenson, and Favorite are entitled to qualified immunity.

Plaintiff has filed an Opposition.[24] She argues that Gusman is liable in his official capacity notwithstanding the appointment of the compliance director and that the events giving rise to the need for a compliance director in fact support her official capacity claim against Gusman and the other named deputies. She further argues that she has alleged sufficient facts to maintain a claim against Favorite, and that her claim against Stevenson survives because while his falsification of a report is part of her Section 1983 claim against him, it is not the entire basis for the claim. Finally, she contends that she has alleged sufficient facts by which the Court could find the deputies' actions to be objectively unreasonably, and therefore the Court should not dismiss her claims against the deputies on the basis of qualified immunity. Defendants have filed a Reply[25] in which they largely reiterate the arguments made in their opening Motion.

Defendant Jason Williams, in his official capacity as Orleans Parish District Attorney, also moves to dismiss the case.[26] Williams argues that Vega has not

---

[24] R. Doc. 14.
[25] R. Doc. 22.
[26] R. Doc. 36.

identified a constitutional right violated by OPDA or that such a right was violated pursuant to an official policy of his office. He also argues that any claim for malicious prosecution is not cognizable under Section 1983.

Vega has filed an Opposition to Williams's Motion.[27] Vega argues that she has adequately stated a claim against Williams for malicious prosecution under Louisiana state law. Vega also argues that William's office lacked probable cause to bring claims against her. With respect to her Section 1983 claim, Vega contends that her allegations are "sufficient to allow the Court to reasonably infer that the OPDA [Orleans Parish District Attorney's Office] has a practice of failing to properly screen and investigate cases, which led to the violation of Ms. Vega's constitutional rights."[28]

In his Reply[29] Williams argues that Vega's Complaint contains no mention of any state-law claim for malicious prosecution and that, in any event, the facts alleged undermine such a claim. Further, Williams argues that any state-law claim is barred by absolute prosecutorial immunity. Finally, Williams reiterates that the Complaint lacks any facts establishing a violation of Vega's constitutional rights by his office.

## II.   LEGAL STANDARD

To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[30] A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[31]

---

[27] R. Doc. 37.
[28] *Id.* at 7.
[29] R. Doc. 41.
[30] *Romero v. City of Grapevine, Tex.*, 888 F. 3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[31] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[32] In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[33] However, the allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[34] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[35]

### III. ANALYSIS

#### A. Final Policymaker

OPSO Defendants' first argument is that Gusman cannot be sued in his official capacity because he was not the "final policymaker" at the time of the alleged incidents giving rise to Plaintiff's claims. In order to state a Section 1983 claim against Gusman, Plaintiff must plead facts that plausibly establish (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[36] State law determines whether an official is a "policymaker."[37] Under Louisiana law, the sheriff is the "final policymaker" for the public jail of his parish.[38]

---

[32] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (per curiam).
[33] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[34] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).
[35] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).
[36] *Raliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).
[37] *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019).
[38] *See* La. R.S. 15:704; 13:5539(c).

OPSO Defendants argue that Gusman is not the "final policymaker" because in *Jones et al. v. Gusman*, a separate section of this Court issued an order appointing a compliance director for Orleans Parish Prison in connection with a consent decree entered into by the prison.[39] That order provides the compliance director with a broad range of powers, and he is answerable only to the Court.[40] Moreover, the compliance director functions as a court-appointed receiver, and therefore enjoys judicial immunity.[41]

The question, though, is not whether the compliance director is entitled to judicial immunity, but rather whether the compliance director (and not Gusman) is the "final policymaker" at Orleans Parish Prison. The answer to that question is no. As an initial matter, the district court's order in *Jones* is not "state law" and therefore cannot be the basis for a determination that the director is a "policymaker."[42] Moreover, OPSO Defendants overread the order appointing the compliance director. Other sections of this Court have found that the under the order the "compliance director's authority is limited to implementing the Consent Judgment"[43] and have noted that the compliance director must seek advice and/or approval from Gusman.[44] Indeed, the other sections of this Court which have considered this question have

---

[39] *See* Docket No. 12-859, R. Doc. 1082. The current compliance director is Darnley Hodge. *See* Docket No. 12-859, R. Doc. 1151.
[40] *See generally id.*
[41] *See, e.g., Crawford v. Gusman*, No. 17-3397, 2018 WL 3773407, at *3 (E.D. La. Aug. 9, 2018).
[42] *Webb*, 925 F.3d at 215.
[43] *Oliver v. Gusman*, No. 18-7845, 2020 WL 1303493, at *9-10 (E.D. La. Mar. 19, 2020).
[44] *See* Docket No. 12-859, R. Doc. 1082 at 3.

similarly found that Gusman, not the compliance director, is the "final policymaker" for the purpose of a Section 1983 claim.[45]

Moreover, the cases OPSO Defendants cite to are not to the contrary. Rather, they stand only for the undisputed proposition that the compliance director is entitled to judicial immunity; they do not stand for the proposition that the compliance director is a "final policymaker."[46] Indeed, at least one case went on to consider claims against Gusman in his official capacity.[47] Accordingly, the Court rejects Defendants' arguments that the claims against Gusman must be dismissed because he is not a "final policymaker."

### B.   Official Capacity Claims

Defendants next argue that Plaintiff's official capacity claims against Sheriff Gusman must be dismissed because Plaintiff fails to adequately allege an "official policy" that led to the alleged constitutional violation. As described above, to state a claim against Gusman in his official capacity, Plaintiff must plead facts that plausibly establish (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[48] The question here deals with whether Vega has met the second and third elements of the test.

To establish an official policy that would give rise to liability, a plaintiff may (1) rely on written policy statements, ordinances, or regulations; (2) show a

---

[45] *Johnson v. Gusman*, No. 19-13949, 2020 WL 2475809, at *3-4 (E.D. La. May 13, 2020); *Oliver*, 2020 WL 1303493, at *9-10.
[46] *See Crawford*, 2018 WL 3773407, at *2-3; *Short v. Gusman*, No. 18-3174, 2019 WL 1326645, at *3-4 (E.D. La. Mar. 25, 2019).
[47] *See Crawford*, 2018 WL 3773407, at *3-4.
[48] *Raliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (3) in rare circumstances, demonstrate that a single decision that forms the basis of the Section 1983 claim was made by someone with final policymaking authority.[49]  "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."[50]  Plaintiff does not cite to any written policy statements, ordinances, or regulations, nor does Plaintiff argue that Gusman made a single decision that gives rise to her Section 1983 claim.  Instead, Plaintiff argues that a policy exists because of practices that are so widespread as to constitute a custom.  "A customary municipal policy cannot ordinarily be inferred from single constitutional violations."[51]  As noted by the Fifth Circuit, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."[52]

Here, Plaintiff's Complaint lacks any allegation regarding an official policy of Orleans Parish Sheriff's Office that would give rise to an official capacity claim against Gusman.  Similarly, the Complaint lacks any facts by which the Court could infer any policy or custom in place that would give rise to an official capacity claim.  Although Plaintiff alleges that Gusman was a final policymaker,[53] she fails to allege any policy at issue that gave effect to her constitutional violation.  Additionally, while

---

[49] *Webb v. Town of St. Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) (citations omitted).
[50] *Spiller v. City of Texas City, Police Dept.*, 30 F.3d 162, 167 (5th Cir. 1997).
[51] *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001).
[52] *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).
[53] *See* R. Doc. 1 at 2 ¶ 2.

Vega's Complaint contains numerous allegations regarding the July 8, 2019 incident, these allegations regarding a single incident do not give rise to liability for Gusman in his official capacity.[54] In her Opposition, Plaintiff argues that an official policy, practice, or custom of use of excessive force exists at Orleans Parish Sheriff's Office and that she can prove such a custom exists by citing to the Department of Justice's consent decree and the *Jones* matter.[55] But even were these assertions sufficient to state an official capacity claim against Gusman, they are absent from Vega's Complaint. Accordingly, Vega's official capacity claim against Gusman must be dismissed.

Regarding leave to amend a Complaint, the Federal Rules provide that "[t]he court should freely give leave when justice so requires."[56] That is particularly true where, as here, Plaintiff has suggested facts in her Opposition that she did not plead in her Complaint, and therefore has not necessarily pleaded her best case. Accordingly, the Court will grant Vega leave to amend her Complaint as to her official capacity claim against Gusman within fourteen days of this Order.

The Court also dismisses the official capacity claims asserted against Defendants Johnson, Stevenson, and Favorite for similar reasons and because Vega fails to allege that these three defendants are policymakers of any sort. Plaintiff's Complaint is silent regarding any facts to support these official capacity claims. Additionally, Plaintiff does not present any facts whatsoever in her Opposition that

---

[54] *Piotrowski*, 237 F.3d at 581.
[55] R. Doc. 14 at 9.
[56] Fed. R. Civ. P. 15(a)(2).

Defendants Johnson, Stevenson, or Favorite are policymakers for OPSO. Finding that any amendment would be futile based on the above, the Court will dismiss the official capacity claims against Johnson, Stevenson, and Favorite with prejudice, and will not grant Plaintiff leave to amend her Complaint as to those Defendants.

### C.  Claim Against Deputy Stevenson

OPSO Defendants next argue that Plaintiff's claims against Deputy Stevenson arising from the allegedly false police report should be dismissed. As part of her claim against Stevenson, Vega alleges that "Deputy Floyd Stevenson wrote a report (Item No. G-10-208-19) in connection with Ms. Vega's arrest falsely stating that Ms. Vega punched Deputy Keppard in the back of her head while Deputy Keppard was escorting Ms. Simmons off the stage, which is wholly inconsistent with the eyewitness accounts of the incident."[57] Vega also alleges that this falsified report was the basis for the charges brought against her.[58]

As OPSO Defendants correctly point out, courts have held that a plaintiff does not have a constitutional right to a correct police report. The Fifth Circuit has held that "[t]here is no right to a completely accurate police report."[59] Similarly, the Third Circuit has held that "the mere existence of an allegedly incorrect police report fails to implicate constitutional rights."[60] Indeed, confronted with allegations not unlike those here, the Fifth Circuit held in *Rich v. Palko*,[61] that "an inaccurate post-incident

---

[57] R. Doc. 1 at 8 ¶ 39.
[58] *Id.* at 8 ¶ 38.
[59] *Smith v. Patri*, 99 F. App'x 497, 498 (5th Cir. 2004) (per curiam).
[60] *Jarrett v. Town of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009).
[61] 920 F.3d 288.

report . . . designed to provide probable cause to support a warrantless detention" did not give rise to a Section 1983 claim, nor did it "serve as a continuing constitutional violation."[62] A series of non-binding cases have held that when an inaccurate police report is the cause of other harms, the police report may be the basis for a Section 1983 claim.[63] The Fifth Circuit's rulings in *Smith* and *Rich* are in direct tension with such authority. But in any event, this non-binding caselaw focuses on whether a plaintiff "suffered any consequences implicating [her] constitutional rights."[64] The consequence of the false police was Plaintiff's subsequent prosecution. And as discussed below, that prosecution does not implicate Vega's constitutional rights under Fifth Circuit law. Accordingly, Vega may not pursue a Section 1983 claim against Stevenson based on the false police report.

In her Opposition, Vega emphasizes her other allegations against Stevenson giving rise to her Section 1983 claim, including her allegation that Stevenson knocked her to the ground.[65] Although Defendants separately argue that Stevenson is entitled to qualified immunity, Defendants' Motion does not address the other claims against Stevenson in arguing that any claim based on the false police report should be dismissed. The Court therefore finds that while Vega may not pursue her Section 1983 claim against Stevenson based on the allegedly false police reports, she may still

---

[62] *Id.* at 297.
[63] *See, e.g.*, *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980); *Comfort v. Town of Pittsfield*, 924 F.Supp. 1219, 1230 (D. Me. 1996).
[64] *Cruz v. Fulton*, No. 14-2015, 2016 WL 4543613, at *5 (E.D. La. Aug. 31, 2016).
[65] R. Doc. 1 at 5 ¶ 19.

pursue her Section 1983 claim against Stevenson based on her other allegations of violations of other constitutional rights.

### D.    Claim Against Deputy Favorite

Defendants next contend that Plaintiff's claims against Favorite should be dismissed because Plaintiff has failed to plead with specificity any actions that could hold him liable.[66]  In her Complaint, Vega alleges that Favorite was "acting under the direction and supervision of Defendant Gusman" and that he "was on the scene when Ms. Vega was wrongfully arrested and played a role in wrongfully detaining Ms. Vega on the night of the incident."[67]  Favorite is again mentioned in the factual allegations of the Complaint as a person who "individually assisted and willfully acted maliciously towards Ms. Vega, both at Harrah's Casino/Club Masquerade and at the OJC."[68]  No other factual allegations against Favorite are contained in the factual background of the Complaint.  The question before the Court is whether the facts alleged regarding Favorite's involvement in the alleged misconduct against Plaintiff are sufficient to survive a motion to dismiss.

When addressing the liability of an officer, the Fifth Circuit has drawn a distinction between a Defendant who is an active participant and one who is a bystander to the alleged misconduct.  For example, in *James by James v. Sadler*, the Fifth Circuit concluded the district court improperly granted summary dismissal against officers because, although they did not perform the alleged wrongful pat-

---

[66] R. Doc. 11-1 at 9-10.
[67] R. Doc. 1 at ¶ 6.
[68] *Id.* at 9 ¶ 46.

down of the defendant, they remained armed on the premises throughout the search and detained customers outside the shop while the search and arrest proceeded.[69] Similarly, the Fifth Circuit found that an officer who stood armed at the door while a search was proceeding was "a full, active participant in the search, not a mere bystander," and that "[b]oth men thus performed police functions that were integral to the search."[70] In contrast, this Court has stated "mere presence" is not sufficient to establish liability under Section 1983.[71]

Here, Vega has alleged sufficient facts, viewed in the light most favorable to her, to survive a motion to dismiss. Rather than allege that he was merely present at the incident, she alleges that Favorite "individually assisted" with the acts against her and that he "played a role" in the unreasonable force of use against her. Courts have found that Section 1983 claims lie against officers in similar circumstances.[72] At a minimum, Vega's allegations give rise to a bystander liability claim. "To state a bystander liability claim, a plaintiff must show that an officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'"[73] Such elements may

---

[69] 909 F.2d 834, 837 (5th Cir. 1990).
[70] *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989); *see also Creamer v. Porter*, 754 F.2d 1311 (5th Cir. 1985).
[71] *Douglas v. DePhillips*, No. 17-2305, 2017 WL 4574422, at *14 (E.D. La. Oct. 13, 2017), aff'd, 740 F. App'x 403 (5th Cir. 2018) (quoting *Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002); *see also Back v. Tex. Dep't of Crim. Justice Inst'l Div.*, 684 Fed. App'x 356, 359 (5th Cir. 2017) ("Without any personal involvement by those two defendants, [plaintiff's] § 1983 claims could not succeed as a matter of law.").
[72] *See, e.g.*, *Boquet v. Belanger*, No. 14-2228, 2015 WL 1650255, at *3-*4 (E.D. La. Apr. 15, 2015); *Stewart v. Stadler*, No. 05-416, 2007 WL 84892, at *4 n.1 (W.D. La. Jan. 19, 2007).
[73] *Douglas v. DePhillips*, No. 17-2305, 2017 WL 4574422, at *11 (E.D. La. Oct. 13, 2017) (quoting *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

be reasonably inferred from the facts alleged against Favorite. Accordingly, the Court denies Defendants' Motion to Dismiss as to Favorite.

### E.    Qualified Immunity

Finally, Defendants argue Plaintiff's individual claims against Johnson, Stevenson, and Favorite should be dismissed because they are entitled to qualified immunity. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."[74] Asserting a qualified immunity defense initiates a "procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."[75] A district court must first conclude "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[76] After the court finds a plaintiff has so pleaded, the court may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim" if the court remains "unable to rule on the immunity defense without further clarification of the facts."[77]

Accepting the facts as true, the Court finds that Plaintiff has sufficiently pleaded facts that would overcome Defendants' assertion of qualified immunity. Vega

---

[74] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).
[75] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[76] *Id.* (quoting *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986).
[77] *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987).

has alleged that "without any justification, provocation, or prior warning" she was "knocked to the ground by three or four deputies, including Deputy Michelle Johnson and Deputy Floyd Stevenson" and that they "pulled [her] hair and knocke[d] her to the ground with such force that [her] clothes were removed, leaving her breasts exposed in public."[78] She further alleges that during her allegedly improper detention, "at least two of the deputies directed verbal attacks at [her] as well as physical abuse, including but not limited to prohibiting her from using the restroom, threatening her, accusing her of attempting escape from the handcuffs, and overly tightening the handcuffs."[79] Use of excessive force is a violation of a person's constitutional rights.[80] Similarly, her alleged wrongful arrest is also a violation of her constitutional rights.[81]

Defendants do not seriously allege that the allegations by Vega do not assert a violation of her constitutional rights. Rather, they argue that Plaintiff's Complaint fails to establish that the Deputy's actions were not objectively reasonable. They contend that Plaintiff's Complaint alleges only that "she was treated poorly, wrongfully detained, and wrongfully arrested."[82] But, as described above, Vega's Complaint alleges facts that, when viewed in the light most favorable to Vega, would lead a jury to conclude that the Deputies acted unreasonably. These facts include the force used to knock her to the ground, which she alleges was use without provocation,

---

[78] R. Doc. 1 at 5 ¶ 19.
[79] *Id.* at 6 ¶ 22.
[80] *Flores v. City of Palacious*, 381 F.3d 391, 396 (5th Cir. 2004).
[81] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).
[82] R. Doc. 11-1 at 11.

her allegedly wrongful arrest, and the Deputies' aggressive behavior towards her while she was detained. Vega has therefore pleaded facts that overcome the defense of qualified immunity.

Although Plaintiff has alleged facts that overcome the defense of qualified immunity, after more factual development the deputies may prove they are entitled to such immunity. On this record, the Court cannot determine whether Stevenson, Favorite, and Johnson are entitled to a qualified immunity defense. Accordingly, the Court finds more factual discovery is needed to determine the "objective unreasonableness" of the deputies in light of established law. The Court will therefore issue a discovery order limiting discovery against Stevenson, Favorite, and Johnson to this issue.

### F. Jason Williams's Motion to Dismiss

Vega asserts that the "Orleans Parish District Attorney's Office pursued the charges in the case in light of the false reports written by Deputy Floyd Stevenson without properly screening the case, without thoroughly investigating the case, and failing to obtain the readily obtainable statement of Deputy Keppard."[83] According to Vega, as a result of OPDA's improper prosecution her case "languished" in Orleans Parish Criminal District, but was ultimately dismissed "after the judge was

---

[83] R. Doc. 1 at 8 ¶ 38. *See also id.* at 7 ¶ 31 ("The Orleans Parish District Attorney's Office pursued charges in the case in light of the false reports written by Defendant Deputy Floyd Stevenson."); *id.* at 9 ¶ 42 ("The Orleans Parish District Attorney and/or his employees pursued charges and wrongfully prosecuted Ms. Vega for at least seven months without justification and a proper screening of the case.").

presented with clear and unequivocal evidence that Ms. Vega committed no wrongdoing."[84]

The question before the Court is whether these allegations give rise to a claim by Vega against Williams. To the extent Vega seeks to allege a malicious prosecution claim under Section 1983, no such a claim exists under Fifth Circuit jurisprudence. "There is no constitutional right to be free of malicious prosecution."[85] Accordingly, Plaintiff's Section 1983 claim against Williams must be dismissed.

In her Opposition, Vega argues that she also alleges a Louisiana state-law claim of malicious prosecution. Vega's Complaint lacks any reference to such a state-law cause of action. In any event, such a cause of action is not supported by the facts Vega alleged, as the Louisiana Fourth Circuit has held that a district attorney is afforded absolute immunity—even in his official capacity—for actions taken in his role as a prosecutor in the judicial phase of the criminal process.[86] As the law is clear that the Orleans Parish District Attorney's Office is entitled to absolute immunity, the Court finds that any amendment to the Complaint would be futile. Accordingly, the Court shall not grant leave to Plaintiff to amend her Complaint to include a state-law claim against Williams.[87]

---

[84] *Id.* at 7-8 ¶¶ 32-33.
[85] *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020). *See also Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc) ("[W]e conclude that no such freestanding constitutional right to be free from malicious prosecution exists.").
[86] Tickle v. Ballay, 259 So. 3d 435, 438 (La. App. 4 Cir. 2018); *Accord Singleton v. Cannizzaro*, 956 F.3d 773, 779-781 (5th Cir. 2020).
[87] *Stripling v. Jordon Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is well within the district court's discretion to deny leave to amend if it is futile.").

IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim against Marlin Gusman is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted leave to amend her Complaint as to her claim against Defendant Gusman within fourteen days. Plaintiff's official capacity claims against Stevenson, Johnson, and Favorite are **DISMISSED WITH PREJUDICE**. Plaintiff's claim against Stevenson arising from the police report is **DISMISSED WITH PREJUDICE**. Plaintiff's claim against Jason Williams, in his official capacity, is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, May 17, 2021.

*[signature]*
**WENDY B. VITTER**
**United States District Judge**