| | | EFFECTIVE DATE: | 5/19/16 |
|---|---|---|---|
| | Orleans Parish Sheriff's Office POLICY & PROCEDURES | LAST REVIEW DATE: | |
| | | REVIEW DATE: | 5/19/2020 |

| SUBJECT: | Use of Force | | |
|---|---|---|---|
| OPSO NUMBER: | 1501.01 | | |
| FORMS: | First Report of Injury Form | | |
| AUTHORIZING AUTHORITY: | Sheriff | Signature: ON FILE | Date: |
| | Compliance Director | Signature: ON FILE | Date: |
| RECOMMENDING AUTHORITY: | Chief of Corrections | Signature: ON FILE | Date: |
| CONSENT JUDGEMENT #: | IV(A)1, IV(A)2 | | |
| ADDITIONAL REFERENCES: | Louisiana Law Enforcement Handbook, Louisiana Code of Criminal Procedure | | |

## I. POLICY

Orleans Parish Sheriff's Office employees shall employ force only in incidents of justifiable self-defense, the protection of others and the protection of property; the prevention of escapes; and to maintain facility security. Use of force shall be considered a last resort and used only if verbal communication fails and/or if the failure to use some measure of force would result in imminent harm to staff, inmates, others or property.

In no event is physical force as punishment justifiable. In vesting staff with the lawful authority to use force for the public welfare, a careful balancing of all human interests is required. The degree of force employed must reflect the totality of circumstances surrounding the immediate situation. Any force used shall be only that which is reasonably necessary to accomplish a lawful task. Force used shall be the minimum amount necessary and that it shall be proportional to the threat or resistance raised.

## II. APPLICABILITY

This policy applies to all OPSO employees, contractors, volunteers, and inmates.

**EXHIBIT E**

OPSO 00389

## III. AUTHORITY

A. **Louisiana Administrative Code, Title 22, Corrections, Criminal Justice and Law Enforcement, Part III. Commission on Law Enforcement and Administration of Criminal Justice, Subpart 2. Minimum Jail Standards:**

   No standards apply to this topic.

B. **Louisiana State Department of Public Safety and Corrections Basic Jail Guidelines:**

   - I-009
   - III-005

## IV. STANDARDS REFERENCED

A. **American Correctional Association (ACA), 4th Edition, Performance-Based Standards for Adult Local Detention Facilities:**

## V. GENERAL INFORMATION

A. **Factors Affecting the Decision to Use Force**

   1. The decision to use force and the degree of force used are based on consideration of the following factors:

      a. The immediate need to protect one's self, or others, from physical assault.

      b. The totality of the circumstances considered when making a decision to use force. The question is whether the actions are "objectively reasonable" in light of all the facts and circumstances confronting the staff member, at the time the force is used.

         1) Circumstantial considerations include, but are not limited to:

            a) The type of offense (criminal act and/or inmate rule violation) being committed or attempted.

            b) Relative size/stature/strength of the inmate and the staff member.

            c) Number of staff involved.

            d) Number of inmates involved.

            e) Availability of back-up assistance.

            f) Inmate(s) access to weapons.

            g) Inmate(s) under the influence of alcohol or drugs.

            h) Exceptional abilities/skills (e.g., martial arts).

            i) Injury to or exhaustion of the staff member.

            j) Immediacy of danger.

      k) Distance from the inmate.

      l) Knowledge (e.g., subject's prior history of violence, etc.).

      m) In some outdoor situations, weather or terrain conditions may also affect the considerations.

      n) In some indoor situations, building system malfunctions or activations may also affect the considerations.

2. The degree of force used must be balanced against the certainty of an inmate's involvement in an offense, and the consequences of not using force to stop the offense.

3. In all cases, the use of force, especially lethal (deadly) force, must be balanced against the risk of injury to innocent inmates/staff.

4. Where a need to preserve or restore order exists, the use of force must be weighed against the consequence of failing to use sufficient force, i.e., the dangers of escape or allowing the situation to continue unchecked.

5. The staff member's emotional state at the time use of force is being considered. It is critical that the staff not allow anger and/or any other factors not consistent with reasonable judgment affect the decision to use force.

6. Situations may occur where staff must immediately react and/or respond using defensive measures not provided in OPSO defensive tactics training as a last resort to protect human life. Force used in these situations may involve the use of techniques or weapons not specifically authorized by policy.

### B. The Decision to Use Force

1. The decision to use force can be classified into two categories: a) immediately necessary use of force and b) planned use of force.

2. In certain extenuating circumstances and after confrontation avoidance has failed or is not practical, staff may decide whether to use force on an inmate who has an apparent injury or a condition such as pregnancy, a mobility or other type of disability, or mental illness. In these situations, medical and/or mental health staff are consulted if time allows. With or without the information provided by the medical/mental health staff, the staff member must assess whether the situation is grave enough to require the use of force.

    a. Immediately Necessary Use of Force:

      1) The need to use force immediately typically occurs in situations where time and/or circumstances do not allow for planning and/or approval by a higher ranking staff member. Staff are expected to know the use of force continuum described in this policy and to determine the appropriate degree of force needed to control the situation.

2) Examples of immediate use of force situations include, but are not limited to:
   a. Direct battery on a staff member or another inmate.
   b. Separating inmate combatants.
   c. Stopping an inmate attempting to harm him/herself.
   d. Restraining a combative inmate.
   e. Apprehending an escaping inmate.

b. Planned Use of Force:
   1) Planned use of force typically occurs when situations permit time to consult with a supervisor, qualified health care or mental health professional; and where there is an opportunity to plan the actual use of force approach and assemble the necessary resources of equipment and staff.
   2) While it is recognized that an inmate who is threatening to injure him/herself or others may escalate an incident into an immediately necessary force situation, a well-planned use of force approach presents the best means of preventing or limiting injury to staff and inmates.
   3) All planned uses of force are required to include the following:
      a) Supervisory approval of the plan and the presence of the approving supervisor responsible for the area in which the situation and the planned use of force is occurring. CJ IV(A)3e
      b) Non-physical efforts to resolve the issue, such as conversation with the involved inmate(s), direct orders, move inmate away from the situation, etc.
      c) The use of available protective equipment such as tactical vests, shields, helmets, protective pads, etc. by involved deputies.
      d) Supervisory consideration of using deputies assigned to the facility. Considerations in this decision are:
         i. The number of deputies on duty at the time of the situation.
         ii. The number of facility deputies trained to assist in cell extractions.
         iii. The number of inmates involved in the situation.
         iv. The likelihood the inmates are in possession of weapons.
      e) The use of additional deputies if the supervisor has insufficient deputies available to assist.
      f) Supervisory consultation with medical and, mental health staff.

OPSO 00392

      i. The inmate's medical records are reviewed by medical staff to determine if there are any medical contraindications to force being used.

      ii. If the decision is to use force, mental health staff are consulted about the type of force that is being considered to determine if there are contraindications.

      iii. Medical and mental health staff is directed to stand-by to respond if needed.

g) A hand-held video camera and any CCTV cameras available in the area are used to record all planned uses of force. The resulting video footage is included as an addendum to the use of force and incident reports. (Refer to OPSO Policies 801.16: Incident Reporting.)

### C. Use of Force Continuum

1. The use of force continuum provides guidance in decision making when staff are confronted with an incident where the use of force may be necessary. There is no rigid hierarchy or specific initial sequence requiring one particular degree of force or equipment to be used. The degree of force and type of equipment to be used is dictated by the assessed risk presented and the severity of the conditions confronting staff.

2. Deputies are taught the use of force continuum and the force techniques included in the continuum during initial and annual in-service training provided by the OPSO Training Division.

3. **Use of force continuum:**[1]

    a. Deputy presence:

      1) Deputy presence is often sufficient to stop a situation from beginning or to de-escalate a situation that has begun.

    b. Verbal communications:

      1) If deputy presence doesn't stop or de-escalate a situation, verbal communication by the deputy is often sufficient to gain compliance. Verbal communication may vary depending on the situation and the inmates involved.

        a) Verbal requests may be used when the situation is not volatile.

        b) Verbal commands are more directive and immediate.

        c) Verbal warnings include commands and information to the inmate(s) of the consequences of continuing the behavior.

---

[1] Adapted from the *Louisiana Law Enforcement Handbook*, 12th edition (on-line version), January 2014, pgs. 95-98

    c. Soft or "empty hand" techniques:

        1) If verbal communication techniques are insufficient, deputies may be justified in using "soft hand techniques" to obtain compliance.

        2) Examples of these techniques include, but are not limited to, the arm bar or the use of pressure point techniques.

    d. Chemical agents:

        1) Examples of chemical agents include oleoresin capsicum (O.C.), *ortho-chlorobenzal malononitrile* (C.S.), and *chloroacetophenone* (C.N.).

        2) Only chemical agents issued by the OPSO are authorized for on-duty use or use when working off-duty details. (Refer to OPSO Policy 1501.08: Use of Chemical Agents.)

    e. Hard or "closed hand" techniques:

        1) If chemical agents and/or "soft hand" techniques are ineffective, or use of more force is immediately justified, hard or "closed hand" techniques may be employed. Such techniques include strikes to muscle groups (for the purpose of "un-tensing" or releasing) or other prominent bodily protrusions (such as the chin or collar bone).

        1) Deputies are required to be trained and certified by the OPSO in the use and legal implications of using impact weapons prior to carrying or using them.

        2) Impact weapons are never carried in OPSO detention facilities with the following exceptions:

            a) Deputies assigned to ISB involved in a call-out/planned use of force.

            b) During training exercises.

    f. Lethal force:

        1) Lethal force is only used as a last resort.

        2) Lethal force is not delivered only by firearms. Certain hand and impact weapon techniques (such as continuous blows to the head or striking the head against an object) are considered lethal force.

## D. Situations in Which Use of Force May be Appropriate

*Note: In all use of force situations the use of force must be stopped immediately when the inmate is under control and/or the harm has ended. The authorized degree of force is strictly limited to that which is objectively reasonable and necessary.*

1. Self-defense:

    a. Only the degree of force immediately necessary to protect oneself from harm may be used.

2. To protect others:
    a. Only the degree of force immediately necessary to protect another person, or property in another person's lawful possession against a forcible offense may be used.
3. During a lawful arrest:
    a. When making a lawful arrest, only objectively reasonable and necessary force may be used to overcome any resistance or threatened resistance of the person being arrested or detained.
    b. NOTE: Louisiana courts have taken the position that a person has the right to resist an unlawful arrest. A deputy, therefore, should do everything possible to ensure that any arrest is lawful and to proceed in a lawful manner in making that arrest.
    c. If force is used during an arrest, the deputy knows or should know any unlawful, action (s) may constitute an assault, battery, and/or a violation of an individual's constitutional rights.
4. Use of force to prevent escape from arrest:
    a. Only a reasonable degree of force, **but not deadly force**, may be used to prevent the flight or escape of a misdemeanant or a non-violent, non-dangerous felon. In order to prevent the flight of non-dangerous inmates, deputies may take reasonable action to restrain the inmate, but shall not take any action that endangers the life of the inmate merely to prevent him/her from escaping arrest for a misdemeanor or non-violent, non-dangerous felony. (For circumstances in which lethal force may be an acceptable option as a response to prevent an escape from arrest, refer to section VIII (F) of this section.)
5. Use of force to prevent flight or escape from OPSO detention facilities:
    a. Only a reasonable degree of force may be used to prevent the flight or escape of an inmate as directed by Article 227.1 of the Louisiana Code of Criminal Procedures which states:

    "A guard or other law enforcement officer is justified in the reasonable use of force, to prevent the escape from a state correctional facility or parish prison of a person under sentence or awaiting trial or commitment for an offense."

E. **Prohibited Uses of Force** CJ IV (A) 2

1. Unless accompanied by an immediate threat to the safety or security of the facility, inmates, staff, or visitors, use of force in response to the following are prohibited:
    a. Verbal threats.
    b. Verbal insults and cursing.
    c. Failure to follow instructions.

2. The following uses of force are prohibited at all times:

    a. Against an inmate that has ceased to offer resistance and is under control is prohibited.

    b. As punishment or retaliation.

    c. Kicking, striking, hitting, or punching a non-combative inmate.

    d. Chokeholds.

### F. Situations in Which Lethal Use of Force May be Appropriate

1. Self-defense:

    a. Lethal force may only be used when there is a reasonable belief there is imminent danger of death or great bodily harm and that the use of lethal force is immediately necessary to preserve one's life.

2. Protection of others:

    a. Lethal force may be used to protect others from violent or forcible attacks that are likely to result in imminent death or serious bodily harm to another.

### G. Situations in Which Lethal Force is Not Appropriate or Authorized

1. Discharging firearms at a moving vehicle or from a moving vehicle is prohibited except under circumstance of extreme necessity, and unless the person(s) fired upon represent(s) an immediate threat to the life and safety of the staff member or other innocent persons, and then only as a last resort.

2. Lethal force is not an appropriate response to a subject's failure to stop for a blockade or a failure to obey a command to stop.

3. The use of warning shots is prohibited. (Refer to OPSO Policy 1501.09: Use of Firearms.)