**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **OLIVIA VEGA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1931** |
| **MARLIN GUSMAN, ET AL.** | **SECTION D (2)** |

## ORDER AND REASONS

Before the Court is Defendants Orleans Parish Sheriff Deputy Michelle Johnson, Deputy Floyd Stevenson, and Deputy Bryan Favorite[1] (collectively, the "Deputy Defendants")'s Motion for Summary Judgment on the Issue of Qualified Immunity.[2] Plaintiff Olivia Vega has filed an Opposition.[3] The Deputy Defendants have filed a Reply.[4] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Deputy Defendants' Motion for Summary Judgment on the Issue of Qualified Immunity.

## I.    FACTUAL BACKGROUND

This case arises from an altercation and subsequent arrest of Plaintiff Olivia Vega at Harrah's Casino ("Harrah's"). On the early morning of July 8, 2019, Plaintiff was attending an event sponsored by Larry Morrow Events at the Masquerade night club at Harrah's when a fight broke out.[5] At one point, deputies approached Plaintiff

---

[1] Deputy Bryan Favorite was improperly named "Deputy Alvis Favorite" in Plaintiff's Complaint. *See* R. Doc. 65, footnote 1.
[2] R. Doc. 65.
[3] R. Doc. 72.
[4] R. Doc. 81.
[5] R. Doc. 49 at ¶ 34.

and requested her identification card.[6] Plaintiff handed her license to a friend who provided the license to a deputy.[7] Plaintiff and three friends who attended the event with her followed the deputies out of the club and into Harrah's lobby to gain information about the deputy's inquiry.[8] Plaintiff alleges that when she entered the lobby of Harrah's, she was forcefully knocked to the ground without any justification, provocation, or prior warning by three to four deputies, including Orleans Parish Sheriff Office ("OPSO") Deputy Michelle Johnson and Deputy Floyd Stevenson.[9] Plaintiff contends that the deputies pulled her hair and knocked her to the ground using so much force that her clothes were removed, leaving her breasts exposed in public.[10] She claims that she was then handcuffed and wrongfully detained in a holding room in the casino where at least two of the deputies directed verbal attacks as well as physical abuse.[11]

Plaintiff was arrested on three charges: Battery of a Police Officer, Resisting by Force, and Disturbing the Peace.[12] She was then transported to the Orleans Parish Justice Complex.[13] Plaintiff alleges that at the jail, staff took various items from her which were never returned, that she was forced to strip and wear a jumpsuit and underwear so tight that the clothing bruised her, that she was treated with excessive

---

[6] *Id.* at ¶ 16.
[7] *Id.* at ¶ 17.
[8] *Id.* at ¶ 18.
[9] *Id.* at ¶ 19.
[10] *Id.*
[11] *Id.* at ¶ 21.
[12] *Id.* at ¶ 23.
[13] *Id.* at ¶ 24.

force, and that a medical unit employee used a hypodermic needle to inject her with an unknown substance that caused her to lose consciousness.[14]

Plaintiff was released during the afternoon on July 8 after posting bail.[15] She then attended a court appearance.[16] She alleges that the Orleans Parish District Attorney's Office ("OPDA") pursued charges against her based on false reports written by Deputy Floyd Stevenson, without properly screening the case.[17] The case was ultimately dismissed on March 3, 2020.[18]

Plaintiff then filed suit against Defendant Marlin Gusman as Sheriff of Orleans Parish in his official capacity, Defendant Leon Cannizzaro as District Attorney for Orleans Parish in his official capacity,[19] Deputies Michelle Johnson, Floyd Stevenson, and Bryan Favorite in their official and individual capacities, various John and Jane Doe Deputies, Harrah's Casino, and Larry Morrow Events, LLC.[20] Plaintiff alleged a 42 U.S.C. § 1983 claim against Defendants Gusman, and Deputies Stevenson, Johnson, Favorite, and Does arising out of her arrest and detention at Orleans Jail Center, as well as against Defendant Cannizzaro for her prosecution.[21] Plaintiff also brings a claim for negligent supervision against

---

[14] *Id.* at ¶¶ 25-28.
[15] *Id.* at ¶ 29.
[16] *Id.* at ¶ 31.
[17] *Id.*
[18] *Id.* at ¶ 32.
[19] The Court notes that Jason Williams has been sworn in to succeed Mr. Cannizzaro as Orleans Parish District Attorney and therefore Mr. Williams, in his official capacity, would be the proper party. On May 17, 2021, the Court granted Defendant Jason Williams' Motion to Dismiss, dismissing him from the case. R. Doc. 45.
[20] *See generally* R. Doc. 1.
[21] R. Doc. 1 at ¶¶ 48-55. By Court Order dated May 17, 2021, Plaintiff's claims against the District Attorney (formerly Cannizzaro and currently Williams), were dismissed. Plaintiff's § 1983 claim alleging a violation based on a false police report against Deputy Floyd Stevenson, in his individual and official capacity, was dismissed (leaving only a § 1983 claim against Deputy Stevenson for any

Defendants Harrah's Casino and Larry Morrow Events,[22] and a claim for negligence under Louisiana Civil Code article 2315 against Defendants Johnson, Stevenson, Favorite and Does.[23]  It is the individual capacity claims against Deputies Johnson, Stevenson and Favorite which form the basis for the Motion for Summary Judgment.

On May 17, 2021, the Court stayed discovery as to the Deputy Defendants other than that discovery needed to determine the facts necessary to rule on the Deputy Defendants' claim of qualified immunity.[24] Specifically, the Court limited discovery to the actions of Deputies Floyd Stevenson, Michelle Johnson, and Bryan Favorite on the night of July 8-9, 2019 that Plaintiff asserted in her Complaint, and the objective reasonableness thereof.[25]

Thereafter the Deputy Defendants filed a Motion for Summary Judgment on the Issue of Qualified Immunity.[26] The Deputy Defendants argue that they are entitled to qualified immunity because they had probable cause to arrest Plaintiff and that they did so without using excessive force.[27] Among the evidence relied on by the Deputy Defendants in support of its motion are affidavits from Deputy Johnson, Deputy Favorite, and Deputy Stevenson and a video from Harrah's from the night of the incident.[28]

---

other violation). Finally, all official capacity claims against Deputies Floyd Stevenson, Michelle Johnson and Bryan Favorite were dismissed with prejudice. R. Doc. 45.

[22] *Id.* at ¶¶ 56-61.
[23] *Id.* at ¶¶ 62-65.
[24] R. Doc. 46.
[25] *Id.*
[26] *See* R. Doc. 65.
[27] *Id.*
[28] *See* R. Doc. 69 referencing R. Docs. 65-5, 65-8, and 65-9. Plaintiff filed a Motion to Strike the Affidavits Presented in Support of the Deputy Defendants' Motion for Summary Judgment asserting that they include inadmissible hearsay statements as well as legal conclusions. In a separate Order,

Plaintiff filed a response to the Deputy Defendants' Motion for Summary Judgment on the Issue of Qualified Immunity.[29] Plaintiff argues that the Deputy Defendants did not have probable cause to arrest her because she was not resisting arrest when the Deputy Defendants took her to the ground and handcuffed her.[30] Further, Plaintiff argues that she did not present an immediate threat to the safety of the officers and that the officers acted with excessive force and in violation of OPSO's Use of Force Policy when she was taken to the ground and handcuffed.[31]

The Deputy Defendants filed a reply in which they argue that Plaintiff has failed to provide any evidence to prove that the Deputy Defendants acted unreasonably, thus failing to carry her burden to defeat qualified immunity. Further, the Deputy Defendants distinguish the facts of this matter from several Fifth Circuit decisions cited by Plaintiff.[32]

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the

---

the Court granted this motion in part and struck legal conclusions from the Deputy Defendants' declarations. *See* R. Doc. 110. The Court has only relied on the portions of the Deputy Defendants' affidavits which have not been stricken for purposes of this motion.

[29] R. Doc. 72.

[30] *Id.*

[31] *Id.*

[32] R. Doc. 81.

[33] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

evidence."[34] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[35] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[36]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[37] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[38] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[39] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to

---

[34] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[35] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[36] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[37] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[38] *Id*. at 1265.

[39] *See Celotex*, 477 U.S. at 322-23.

6

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[40]

## III.   LAW AND ANALYSIS

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law. Specifically, it provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[41]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[42] To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[43]

As a defense to § 1983 claims, government officials may invoke qualified immunity, which "shields government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[44] Qualified immunity balances two important interests—the need to

---

[40] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).
[41] 42 U.S.C. § 1983.
[42] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[43] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[44] *Mabry v. Lee County*, 100 F.Supp.3d 568, 572 (N.D. Miss. 2015) (quoting *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *cert. granted, decision rev'd on other grounds*, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)).

hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.[45] The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[46] "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[47] "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[48] Once the government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[49]

To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[50] It is up to the district courts' sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.[51]

In her § 1983 claim, Plaintiff alleges that Deputy Johnson, Deputy Favorite, and Deputy Stevenson violated her Fourth, Fourteenth, and Eighth Amendment

---

[45] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[46] *Id.* at 237 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted).
[47] *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).
[48] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (internal quotation marks omitted).
[49] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).
[50] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).
[51] *Pearson*, 555 U.S. at 236.

rights to be free from false arrest, excessive force, and wrongful detainment.[52] The Court analyzes Plaintiff's claims under each amendment separately.

### A. Plaintiff's Fourth Amendment Claims

Plaintiff makes two claims under the Fourth Amendment: (1) that she was unlawfully arrested by the Deputy Defendants; and (2) that the Deputy Defendants employed excessive force when arresting her.[53] These claims are addressed separately below.

### i. Unlawful Arrest

The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrests made without probable cause.[54] Thus, to prevail on a § 1983 claim alleging false arrest Plaintiff must show the arresting officers lacked probable cause to arrest her.[55] "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[56] This Court has held that probable cause means a "fair probability" that a crime has been committed.[57] According to the Fifth Circuit, Plaintiff must clear a significant hurdle to defeat Defendants' assertion of

---

[52] R. Doc. 49 at ¶ 50.

[53] *Id.* at ¶ 49.

[54] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

[55] *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004).

[56] *Id.* at 655-56 (quoting *Glenn*, 242 F.3d at 313 (internal quotation marks omitted).

[57] *See Fillios v. Harahan Police Department*, Civ. A. No. 19-45, 2019 WL 2009241 (E.D. La. May 7, 2019) (citing *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999)); *Babin v. Par. Of Jefferson,* Civ. A. No. 16-2954, 2018 WL 794535, at *8 (E.D. La. Feb. 8, 2018) (citing *Haggerty*, 391 F.3d at 656 (noting that "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).

qualified immunity because, "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost."[58] Additionally, although "the requisite 'fair probability' is something more than a bare suspicion, [it] need not reach the fifty percent mark."[59]

Here, Plaintiff was arrested and booked with the following charges: (1) La. R.S. 14:34.2, battery of a police officer; (2) La. R.S. 14:103, disturbing the peace; and (3) La. R.S. 14:108.2, resisting a police officer with force.[60]

(1) La. R.S. 14:34.2 – Battery of a Police Officer

Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.[61]

(2) La. R.S. 14:103 -- Disturbing the Peace

Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
(1) engaging in a fistic encounter; or
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or
(3) appearing in an intoxicated condition; or…[62]

(3) La. R.S. 14:108.2 – Resisting a Police Officer with Force

Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim

---

[58] *Haggerty*, 391 F.3d at 656 (citation omitted).
[59] *Garcia*, 179 F.3d at 269.
[60] R. Doc. 49 at ¶ 23.
[61] La. R.S. 14:34.2.
[62] La. R.S. 14:103.

is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty:

    (1) Using threatening force or violence by one sought to be arrested or detained before the arresting officer can restrain him and after notice is given that he is under arrest or detention.

    (2) Using threatening force or violence toward or any resistance or opposition using force or violence to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

    (3) Injuring or attempting to injure a police officer engaged in the performance of his duties as a police officer.

    (4) Using or threatening force or violence toward a police officer performing any official duty.[63]

While these charges were eventually dropped,[64] the Court notes that whether or not there was probable cause is determined at the "moment of the arrest."[65] In determining whether probable cause existed for Plaintiff's arrest, the Court focuses on the Plaintiff's and Deputy Defendants' actions leading to Plaintiff's arrest.

According to Plaintiff, the facts leading up to her arrest begin in the early morning hours of July 8, 2019.[66] Plaintiff was attending an event sponsored by Larry Morrow Events at the Masquerade night club in Harrah's when a fight broke out.[67] During the fight, a female patron struck OPSO Deputy Keppard and caused her injuries.[68] On site Orleans Parish deputies approached Plaintiff and requested her identification card.[69] Plaintiff contends that she provided her license and the deputy then walked out of the club with Plaintiff's license.[70] Plaintiff and three friends

---

[63] La. R.S. 14:108.2
[64] *Id.* at ¶ 32.
[65] *Haggerty*, 391 F.3d at 655 (quoting *Glenn*, 242 F.3d at 313).
[66] R. Doc. 49 at ¶ 34.
[67] *Id.*
[68] R. Doc. 65.
[69] R. Doc. 49 at ¶ 16.
[70] R. Doc. 49 at ¶ 17-18.

followed.[71] Plaintiff alleges that she was attacked from behind, unprovoked, by one of the deputies while she walked into the lobby of Harrah's to inquire why her ID was taken.[72] In her deposition, Plaintiff testified, "As we were walking out, right after I got through the curtains is when I got attacked from behind."[73] Plaintiff was taken to the ground and handcuffed and subsequently escorted to the interview room.[74] Plaintiff asserts that she was wrongfully arrested.[75] Plaintiff contends that Deputy Keppard falsely claimed that she was involved in the fight which resulted in the deputy being struck and that a jury would find that the Deputy Defendants could not have reasonably believed that she had committed a serious crime.[76]

In her Opposition brief, Plaintiff analogizes the present case to *Rice v. Morehouse*, a Ninth Circuit case in which the plaintiff declined to provide his driver's license to an officer during a traffic stop and repeatedly asked to speak to the officer's supervisor.[77] The officer radioed for backup and when additional officers arrived, they removed plaintiff from his car, tripped him, pinned him down, and handcuffed him.[78] The Ninth Circuit ultimately determined that qualified immunity did not apply to the officers.[79] Plaintiff argues that the present case is similar because the Deputy Defendants acted on a false statement that Plaintiff was involved in the battery of

---

[71] R. Doc. 49 at ¶ 18.
[72] *Id.*
[73] R. Doc. 65-7 at 10.
[74] *Id.*
[75] R. Doc. 72.
[76] *Id.*
[77] 989 F.3d 1112 (9th Cir. 2021).
[78] *Id.* at 1116-1117.
[79] *Id.*

Deputy Keppard and subsequently restrained Plaintiff and arrested her.[80] Plaintiff also notes that the actual perpetrator of the battery of Deputy Keppard was already in custody.[81]

The Deputy Defendants dispute Plaintiff's allegations. The Deputy Defendants claim that Plaintiff had been identified as possibly being involved in the fight in which Deputy Keppard was struck and was being walked to an interview room for questioning.[82] The Deputy Defendants contend that while Plaintiff was being escorted to the interview room for questioning, she swung at Deputy Johnson, which required the deputies to restrain and handcuff her.[83] It was after these events that she was arrested for the above offenses. Accordingly, the Deputy Defendants argue that there was probable cause to arrest Plaintiff.

In support of their motion, Defendants have provided declarations from Deputy Johnson, Deputy Favorite, and Deputy Stevenson as well as surveillance video from Harrah's from the evening in question.[84] The evidence provided by the Deputy Defendants reveals that Deputy Keppard informed her fellow deputies that Plaintiff was involved in the fight in which she was struck.[85] Deputy Johnson acted on this information by escorting Plaintiff to the interview room for questioning.[86] While being

---

[80] R. Doc. 72.
[81] *Id.*
[82] *Id.*
[83] *Id.*
[84] *See* R. Doc. 65-5, R. Doc. 65-8, and R. Doc. 65-9.
[85] *Id.*
[86] *See* R. Doc. 65-5.

escorted to the interview room, a struggle ensued, ending when Plaintiff was taken to the ground and handcuffed.[87]

The declarations also describe each deputy's observation that Plaintiff was being aggressive and swung her arms at Deputy Johnson while being escorted to the interview room.[88] There is no evidence that the deputies intended to arrest Plaintiff when they detained her for questioning. Indeed, the portions of the deputies' declarations that reflect that Plaintiff was being taken for questioning are uncontested.

A review of the surveillance footage provided by the Deputy Defendants in further support of their Motion shows Plaintiff being walked by Orleans Parish Deputies in Harrah's.[89] Plaintiff is not handcuffed.[90] The deputies are in uniform with one deputy, presumably Deputy Johnson, walking behind the Plaintiff.[91] Plaintiff can then be seen reaching an arm up in a swinging motion towards Deputy Johnson.[92] At that point, Deputy Johnson and another deputy attempt to restrain Plaintiff by taking her to the ground.[93] The video does not show any striking of Plaintiff.[94] Within 25 seconds of being taken to the ground, Plaintiff stands up, now handcuffed, and the video shows her being walked to the interview room.[95] The video also reveals approximately 50 people, most appearing to be Harrah's patrons, including Plaintiff's

---

[87] *Id.*
[88] *Id.*
[89] R. Doc. 65-6, Exhibit A.
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.*
[95] *Id.*

friends, in the vicinity, some only steps away from the Plaintiff and the deputies at the time.[96] Deputy Johnson then escorts Plaintiff to the interview room without any further struggle.[97]

Plaintiff contends that she was attacked from behind, allegedly by one of the deputies, although Plaintiff testified in her deposition that she did not know who attacked her from behind.[98] In her deposition, Plaintiff contends that she never resisted arrest, but rather was taken to the ground from behind, her hair was being pulled, her shirt was being partially pulled off and that she was merely attempting to cover her exposed breasts.[99] While the Court draws all reasonable inferences in favor of Plaintiff, Plaintiff cannot defeat summary judgment on an unsubstantiated assertion.[100] Plaintiff has provided the Court with nothing more than an unsubstantiated assertion that she was attacked from behind by one of the defendants. Plaintiff has failed to provide any additional video surveillance or direct the Court to any portion of the video which was provided by the Deputy Defendants in their motion, witness statements, including any statement from any of Plaintiff's friends who were present and can be seen in the video, or other evidence that supports her recollection of the events. Instead, the evidence presented by Defendants, including the video, refutes Plaintiff's assertions.

---

[96] *Id.*
[97] *Id.*
[98] R. Doc. 65-7 at p. 34.
[99] R. Doc. 65-7.
[100] *Delta & Pine Land Co.*, 530 F.3d at 398-99 (quoting *Little*, 37 F.3d at 1075).

Plaintiff's reliance on *Rice* is misplaced. Initially, *Rice*, as a Ninth Circuit case, is not binding on the present Court. More importantly, *Rice* is distinguishable from the present facts. In *Rice*, the plaintiff was initially stopped by the police officer for failing to signal for a full five seconds before changing lanes.[101] However, here, the Deputy Defendants initially sought to escort Plaintiff to the interview room because they believed she had been involved in a fight in which a fellow deputy was struck, a far more serious crime than a failure to signal.[102] In addition, the officers in *Rice* tripped and then beat Plaintiff while he was lying on the ground before handcuffing him, causing significant long-term physical injuries.[103] As discussed above, there is no evidence beyond Plaintiff's unsubstantiated assertion that the deputies attacked her. Indeed the video shows that Plaintiff swung her arm towards the deputies while the deputies were walking her, unhandcuffed, for questioning.[104] Plaintiff's swinging of her arm towards the deputies occurs before the deputies attempt to restrain Plaintiff.[105] The struggle which ensued between Plaintiff, Deputy Johnson, and the other OPSO officers lasted less than thirty seconds before Plaintiff was handcuffed and escorted by Deputy Johnson without incident to the interview room.[106] Notably, Plaintiff does not allege that she was beaten by Deputy Johnson or the other OPSO officers beyond being taken down to the ground.[107]

---

[101] 989 F.3d at 1115.
[102] *See* R. Doc. 65-5, R. Doc. 65-8, and R. Doc. 65-9.
[103] 989 F.3d at 1115.
[104] *See* R. Doc. 65-6, Exhibit A.
[105] *Id.*
[106] *Id.*
[107] *See generally* R. Doc. 65-7.

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[108] This Court has held that probable cause means a "fair probability" that a crime has been committed.[109] Similarly, courts have held that probable cause exists when police arrest a person based on a physical description coupled with other evidence suggesting the suspect's connection to the offense.[110] In *Charles v. Smith*, the Fifth Circuit held that a police officer had probable cause to arrest a rape suspect based solely on the facts that he was wearing clothing matching a description by the victim and was found hitchhiking in an area close to the scene of the rape.[111] Likewise, in *United States v. Burbridge*, the Fifth Circuit held that a citizen's eyewitness account of illegal conduct and identification of the perpetrator to police was sufficient to establish probable cause for the arrest of the defendant for illegally carrying a handgun.[112]

Accordingly, the Court finds that there was probable cause for the subsequent arrest of Plaintiff for battery of a police officer, disturbing the peace, and resisting a police officer with force.

---

[108] *Haggerty*, 391 F.3d at 655 (quoting *Glenn*, 242 F.3d at 313).

[109] *See Fillios*, 2019 WL 2009241 (citing *Garcia*, 179 F.3d at 269); *Babin,* 2018 WL 794535, at *8 (citing *Haggerty*, 391 F.3d at 656 (noting that "fair probability" requires more than a bare suspicion but less than a preponderance of evidence)).

[110] *See United States v. Burbridge*, 252 F .3d 775, 778 (5th Cir.2001); *Charles v. Smith*, 894 F.2d 718, 724 (5th Cir. 1990).

[111] 894 F.2d at 724.

[112] 252 F.3d at 778.

### ii.   Excessive Force

The Fourth Amendment also provides citizens with the right to be free from excessive force. "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'"[113] The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.[114] "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.[115] "Reasonableness in these circumstances 'must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'"[116]

To overcome the claim of qualified immunity on her claim for excessive force, Plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[117] In determining whether the use of force was clearly excessive and

---

[113] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. at 396); *see also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (observing that this "area is one in which the result depends very much on the facts of each case.").

[114] *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

[115] *Graham*, 490 U.S. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-139 (1978); *Terry* 392 U.S. at 21).

[116] *Hathaway v. Bazany*, 507 F.3d 312, 320–21 (5th Cir.2007) (quoting *Graham*, 490 U.S. at 397).

[117] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

clearly unreasonable, the Court evaluates each deputy's actions separately, to the extent possible.[118]

Regarding the first factor, Plaintiff alleges that she suffered physical injuries including cuts, bruising, swelling as well as mental and emotional anguish.[119] The Deputy Defendants do not contest that these injuries occurred. Accordingly, Plaintiff has properly alleged an injury.

Turning to the next two factors, the Court notes that the Deputy Defendants addressed each deputy's actions separately. However, Plaintiff opted to address the Deputy Defendants' actions in general and did not conduct a separate analysis for each deputy. Plaintiff contends that the Deputy Defendants fail to show that their actions were objectively reasonable in light of the facts and circumstances surrounding them.[120]

Plaintiff was questioned during her deposition about the actions of each deputy defendant separately.[121] To the extent that her testimony is relevant to this analysis, her testimony is included. Plaintiff argues that the factors delineated in the Ninth Circuit case *Lowry v. City of San Diego* apply and that when assessing the objective reasonableness of a particular use of force, the court should consider: (1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted; (2) the government's interest in the use of force; and (3)

---

[118] *Id.* (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007) (holding that each officer's individual actions should be considered in determining whether qualified immunity applies).
[119] R. Doc. 49 at ¶ 47.
[120] R. Doc. 72.
[121] *See* R. Doc. 65-7.

the balance between the gravity of the intrusion on the individual and the government's need for that intrusion.[122]

Plaintiff then urges the Court to apply the factors outlined in *Graham v. Connor* to evaluate the state's interest at stake in an arrest, and specifically consider: (1) how severe the crime at issue was; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.[123]

Plaintiff also cites several Fifth Circuit cases arguing that a police officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk during a traffic stop.[124] Plaintiff argues that the state had a minimal interest in the arrest of Plaintiff because the Deputy Defendants did not attempt to negotiate with Plaintiff, that Plaintiff did not pose an immediate threat or attempt to flee, and that Plaintiff did not engage in anything more than passive resistance before the Deputy Defendants resorted to overwhelming physical force.[125] Plaintiff concludes that since the video surveillance does not clearly contradict her claim that she was not resisting arrest, the Court should not grant summary judgment.[126]

---

[122] R. Doc. 72 (citing 858 F.3d 1248, 1256 (9th Cir. 2017)).

[123] R. Doc. 72. (citing *Graham*, 490 U.S. at 397.

[124] R. Doc. 72 (citing *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) and *Deville*, 567 F.3d at 167-69.

[125] *Id.*

[126] *Id.*

As described above, the Court must evaluate each deputy's actions separately, to the extent possible, when analyzing an excessive force claim.

### a. Deputy Michelle Johnson

Deputy Michelle Johnson is a reserve deputy with OPSO.[127] On July 8, 2019, Deputy Johnson was working a detail at Harrah's on behalf of OPSO.[128] The Deputy Defendants state that Deputy Johnson escorted the Plaintiff to the back room of Harrah's for questioning regarding a fight that occurred at Club Masquerade and resulted in a female patron striking Deputy Keppard, causing her injuries.[129] The Deputy Defendants allege that while Deputy Johnson was escorting the Plaintiff to the back room, Plaintiff swung her arms at Deputy Johnson.[130] Deputy Johnson and other OPSO officers placed Plaintiff in handcuffs and then escorted her to the interview room for questioning.[131]

In her deposition, Plaintiff was unable to recall what role Deputy Johnson played in her arrest and only alleged that Deputy Johnson was "verbally aggressive" towards her.[132] The Deputy Defendants contend that even if this Court determines a constitutional right was violated, Deputy Johnson is entitled to qualified immunity because she acted objectively reasonable in light of the facts and circumstances confronting her.[133] Specifically, she sought to escort Plaintiff to the interview room only after being told that Plaintiff was involved in a fight wherein Deputy Keppard

---

[127] R. Doc. 65.
[128] *Id.*
[129] *Id.*
[130] *Id.*
[131] *Id.*
[132] *See* R. Doc. 65-7.
[133] *Id.*

was struck.[134] Further, Deputy Johnson placed Plaintiff in handcuffs only after Plaintiff swung her arms at the deputy, in a public area surrounded by casino patrons, while being escorted to the interview room.[135] For these reasons, the Deputy Defendants argue Deputy Johnson is entitled to qualified immunity.

Plaintiff relies on two Fifth Circuit decisions to argue that Deputy Johnson used excessive force.[136] Plaintiff compares the present case to *Hank v. Rogers¸* in which the Fifth Circuit determined that an officer was not entitled to qualified immunity after he struck a plaintiff during a motor vehicle stop while plaintiff was not resisting his orders to stand with his hands behind his back during a traffic stop.[137] Plaintiff also cites *Deville v. Marcantel*, in which the Fifth Circuit determined that officers were not entitled to qualified immunity after they dragged plaintiff from her car after stopping her for driving 10 mph over the speed limit.[138] Plaintiff argues that Deputy Johnson engaged in a similar act of excessive force when taking down and handcuffing Plaintiff.[139]

The Court finds that Deputy Johnson's actions were neither excessive nor unreasonable. The evidence reflects that Deputy Johnson escorted Plaintiff to the interview room only after being told that Plaintiff was involved in a fight wherein Deputy Keppard was struck.[140] Further, unlike the officers in *Hank* and *Deville*, who arrested plaintiffs who had been complying with officer commands during minor

---

[134] R. Doc. 65-5.
[135] *Id.*
[136] R. Doc. 72.
[137] R. Doc. 72 (citing 853 F.3d 738 at 743).
[138] R. Doc. 72 (citing 567 F.3d at 167-69).
[139] R. Doc. 72.
[140] *Id.*

motor vehicle stops, the evidence in the record supports that Deputy Johnson placed Plaintiff in handcuffs only after Plaintiff swung her arms at the deputy while being escorted to the interview room.[141] A review of the surveillance video does not appear to show Deputy Johnson, or any deputy, strike Plaintiff when restraining or handcuffing Plaintiff.[142] The video shows approximately 50 people, most of whom appear to be Harrah's patrons, in the surrounding area, some only steps away from the deputies and Plaintiff.[143] As such, Plaintiff's swinging of her arm towards the deputies posed a threat to both Deputy Johnson as well as the surrounding people. The video does not show any physical restraint or altercation between Plaintiff and the Deputy Defendants until Plaintiff turns around and swings her arms at Deputy Johnson. Plaintiff is then restrained on the ground for approximately 30 seconds upon which she is handcuffed, resumes standing, and then is escorted to the interview room without further incident.[144] Indeed, Plaintiff does not allege that Deputy Johnson struck her beyond the initial take down while attempting to handcuff her.

Further, Plaintiff does not provide any evidence detailing excessive use of force by Deputy Johnson. In her deposition, Plaintiff was unable to describe what actions Deputy Johnson took that were excessive or unreasonable. Plaintiff states that she was "taken to the ground" and her "hair was being pulled."[145] However, Plaintiff is unable to describe who engaged in these actions.[146] Plaintiff stated "I don't know if

---

[141] *Id.*
[142] *See* R. Doc. 65-6, Exhibit A.
[143] *Id.*
[144] *Id.*
[145] *Id.* at p. 34-35.
[146] *Id.* The Court notes that while Plaintiff states in her deposition that she is unaware who took her to the ground and handcuffed her, Deputy Johnson confirms in her declaration (R. Doc. 65-5) that she

she [Deputy Johnson] herself was physically harmful. I don't know if she was the one that attacked me from behind, but she was a willing participant in the situation."[147] Denial of a qualified immunity defense to an excessive force claim is warranted if "a reasonable officer would have known that the degree of force was unconstitutionally excessive under the circumstances."[148] Considering the evidence in the record, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Deputy Johnson's actions were objectively reasonable and she did not employ excessive force when restraining Plaintiff.

### b. Deputy Bryan Favorite

Deputy Bryan Favorite is a reserve deputy with OPSO.[149] On July 8, 2019, Deputy Favorite was working a detail at Harrah's on behalf of OPSO.[150] Deputy Favorite received a call that a "certain female was resisting arrest" and witnessed Deputy Johnson escorting Plaintiff to the interview room and walked over to assist with the apprehension of the Plaintiff.[151] Plaintiff was already handcuffed by the time Deputy Favorite arrived to assist.[152]

In her deposition, Plaintiff was unable to recall what role Deputy Favorite played in her arrest and only alleged that Deputy Favorite was "coming inside and

---

handcuffed Plaintiff after Plaintiff swung her arms at the deputy while being escorted to the interview room.
[147] R. Doc. 65-7 at pp. 87-90.
[148] *Deville*, 567 F.3d at 169.
[149] R. Doc. 65.
[150] *Id.*
[151] *Id.*; *see also* R. Doc. 65-8.
[152] *Id.*

kind of threatening me [during her interview] and then going outside and telling my cousin a whole different story."[153]

The Deputy Defendants argue that none of Deputy Favorite's actions amounted to a violation of Plaintiff's constitutional rights.[154] The Deputy Defendants contend that even if this Court determines a constitutional right was violated, Deputy Favorite is entitled to qualified immunity because he acted objectively reasonable in light of the facts and circumstances confronting him.[155] Specifically, he assisted with the interview of Plaintiff in the interview room because he was under the understanding that Plaintiff was involved in a fight wherein Deputy Keppard was struck.[156] Further, he witnessed Deputy Johnson attempt to escort the struggling Plaintiff to the interview room.[157] For these reasons, the Deputy Defendants argue Deputy Favorite is entitled to qualified immunity.[158]

Considering the evidence before the Court, the Court finds that Deputy Favorite's actions were objectively reasonable. There is no evidence that Deputy Favorite was involved in any struggle with Plaintiff or, indeed, used any physical force on her whatsoever.[159] Plaintiff does not allege that Deputy Favorite was involved in her arrest or that he physically harmed or touched her.[160] Accordingly,

---

[153] R. Doc. 65-7 at pp. 44-47.
[154] R. Doc. 65.
[155] *Id.*
[156] R. Doc. 65-8.
[157] *Id.*
[158] R. Doc. 65.
[159] *See* R. Doc. 65-8.
[160] *See* R. Doc. 65-7.

the Court concludes that Deputy Favorite's actions were reasonable and he did not use excessive force on Plaintiff.

### c. Deputy Floyd Stevenson

Deputy Floyd Johnson is a reserve deputy with OPSO.[161] On July 8, 2019, Deputy Johnson was working a detail at Harrah's on behalf of OPSO.[162] The Deputy Defendants explain that Deputy Stevenson witnessed Plaintiff turning around and swinging her arms at Deputy Johnson who was trying to escort Plaintiff to the interview room.[163] However, Deputy Stevenson was not involved in the arrest of Plaintiff.[164]

Plaintiff was unable to recall precisely what role Deputy Stevenson played in her arrest and only alleged that he read her Miranda rights to her while in the interview room.[165]

The Deputy Defendants argue that none of Deputy Stevenson's actions amounted to a violation of Plaintiff's constitutional rights. The Deputy Defendants contend that even if this Court determines a constitutional right was violated, Deputy Stevenson is entitled to qualified immunity because he acted objectively reasonable in light of the facts and circumstances confronting him.[166] Specifically, he assisted with the interview of Plaintiff in the interview room because he was under the understanding that Plaintiff was involved in a fight wherein Deputy Keppard was

---

[161] R. Doc. 65.
[162] *Id.*
[163] *Id.*
[164] R. Doc. 65-9.
[165] R. Doc. 65-7 at pp. 90-91.
[166] R. Doc. 65.

struck.[167] Further, he witnessed Plaintiff "being aggressive" as Deputy Johnson escorted Plaintiff to the interview room.[168] For these reasons, the Deputy Defendants argue Deputy Stevenson is entitled to qualified immunity.[169]

Considering the evidence before the Court, the Court finds that Deputy Stevenson's actions were objectively reasonable. There is no evidence that Deputy Stevenson was involved in the restraint of Plaintiff or, indeed, used any physical force on her whatsoever.[170] Plaintiff does not allege that Deputy Stevenson was involved in her arrest, beyond reading her Miranda Rights, or that he physically harmed or touched her.[171] Accordingly, the Court concludes that Deputy Stevenson's actions were reasonable and he did not use excessive force on Plaintiff.

### d. Violation of the OPSO Use of Force Policy.

Plaintiff separately alleges that the actions of the Deputy Defendants violate the OPSO's Use of Force Policy and that this violation is further proof that the Deputy Defendants acted unreasonably.[172] Plaintiff argues that the Deputy Defendants failed to ensure that the arrest was lawful and made unsubstantiated assumptions before resorting to excessive physical force.[173] The OPSO's Use of Force Policy outlines a number of factors affecting the decision to use force, most notably the "immediate need to protect one's self, or others, from physical assault" as well as:

> The totality of the circumstances considered when making a decision to use force. The question is whether the actions are "objectively

---

[167] R. Doc. 65-9.
[168] *Id.*
[169] R. Doc. 65.
[170] *See* R. Doc. 65-9.
[171] *See* R. Doc. 65-7.
[172] R. Doc. 72.
[173] *Id.*

reasonable" in light of all the facts and circumstances confronting the staff member, at the time the force used.[174]

As described above, the Court has determined that the individual Deputy Defendants had probable cause to arrest Plaintiff and did not act with excessive force when restraining Plaintiff and handcuffing her. In addition, Plaintiff's swinging of her arm towards the deputies posed a threat to both Deputy Johnson as well as the surrounding people at Harrah's. Accordingly, the Court finds it unnecessary to determine whether the Deputy Defendants violated the OPSO Use of Force Policy because it has already determined that the Deputy Defendants' use of force was objectively reasonable based upon the totality of circumstances present.

### e.  John and Jane Doe Defendants.

Plaintiff also asserts claims against several unnamed deputies.[175] Pleadings with "fictitious designation is [sic] common when the true names of the defendants are not yet known and, in most cases, such names are learned only through the process of discovery."[176] "[I]t has long been an accepted practice to allow claims against an unknown defendant to be amended to identify the defendant when his identity is discovered."[177] "[T]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a

---

[174] R. Doc. 72-3.
[175] R. Doc. 1 at p. 3 ¶ 7.
[176] *Gallegos v. Slidell Police Dept.*, No. 07-6636, 2008 WL 1794170, at *3 (E.D. La. Apr. 18, 2008) (citing *Gilmore v. Stadler*, No. Civ. A. 06-1509, 2007 WL 324582, at *2 (W.D. La. Jan. 31, 2007)) (citing *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 288 (1971)).
[177] *Taylor v. City of Winnfield*, 191 F.R.D. 511, 513 (W.D. La. 2000) (Little, C.J.) (emphasis added) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 536-37 (1939); *Local Trademarks, Inc. v. Price*, 170 F.2d 715, 717 (5th Cir. 1948)).

reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into an action."[178]

Here, no objection has been made by Defendants regarding the John Doe defendants. However, the parties have conducted extensive discovery and Plaintiff has failed to amend her complaint to name the specific John Doe defendants. Because these defendants have not yet been named, the Court is unable to analyze their actions in regard to this motion for summary judgment.

### B. Plaintiff's Fourteenth Amendment Claim.

The Fourteenth Amendment to the United States Constitution provides in relevant part that "no State shall…deprive any person of life, liberty, or property, without due process of law."[179] Plaintiff does not differentiate between her Fourth Amendment and Fourteenth Amendment claims. Regardless, in accordance with Fifth Circuit precedent, the Court's analysis of Plaintiff's claims under both amendments is identical.[180] Accordingly, in keeping with the Court's determination that the Deputy Defendants did not violate Plaintiff's Fourth Amendment rights, the Court further finds that the Deputy Defendants did not violate Plaintiff's Fourteenth Amendment rights.

---

[178] Fed. R. Civ. P. 17(a)(3).
[179] U.S. Const. Amend. IV.
[180] *Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998) (applying the same analysis and standards to excessive force claims under the Fourth and Fourteenth Amendment); *see also Deris v. Norman*, No. 12–1456, 2014 WL 906185 (E.D. La. Mar. 7, 2014) (explaining that a plaintiff does not have a "due process" claim under the Fourteenth Amendment if his claim is susceptible to analysis under a specific constitutional source). Here, Plaintiff's claim is susceptible to analysis under the Fourth Amendment, thus separate analysis under the Fourteenth Amendment is inapplicable and would be duplicative.

**C. Plaintiff's Eighth Amendment Claim.**

The Eighth Amendment of the Constitution of the United States prohibits excessive bail, excessive fines, and cruel and unusual punishment.[181] The Eighth Amendment does not apply until an individual is held in custody after a criminal conviction.[182]

Here, there is no allegation that the events at issue occurred while Plaintiff was in custody after a criminal conviction. Thus, Plaintiff's complaint does not state a claim under the Eighth Amendment. Accordingly, Plaintiff's Eighth Amendment claim is **DISMISSED with prejudice**.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment on the Issue of Qualified Immunity filed by the Deputy Defendants Michelle Johnson, Floyd Stevenson and Bryan Favorite[183] is **GRANTED**. Plaintiff's 42 U.S.C. 1983 claims against Deputy Johnson, Deputy Stevenson, and Deputy Favorite are **DISMISSED with prejudice**.

New Orleans, Louisiana, March 29, 2022.


_____
**WENDY B. VITTER**
**United States District Judge**

---

[181] U.S. CONST. Amend. VIII.
[182] *Austin v. Johnson*, 328 F.3d 204, 208 (5th Cir. 2003) (quoting *Johnson v. City of Dall.*, 61 F.3d 442, 444 (5th Cir. 1995)).
[183] R. Doc. 65.